**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**JENNIFER HARSH,**

        **Plaintiff,**

        v.                                                   **Civil Action No.: 5:11-cv-134**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

        **Defendant.**

**REPORT AND RECOMMENDATION
THAT CLAIMANT'S MOTION FOR JUDGMENT ON THE PLEADINGS BE DENIED
AND COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT BE GRANTED**

**I. Introduction**

A.     Background

Plaintiff, Jennifer Harsh, ("Claimant"), filed her Complaint on October 4, 2011, seeking judicial review pursuant to 42 U.S.C. §§ 405(g) of an adverse decision by Defendant, Commissioner of Social Security ("Commissioner").[1] Commissioner filed his Answer on December 12, 2011.[2] On January 11, 2012, Claimant filed a Motion for Judgment on the Pleadings.[3] On February 7, 2012, Defendant filed a Motion for Summary Judgment.[4] On February 13, 2007, Claimant filed a Response in Opposition to Defendant's Motion for

---

[1] Dkt. No. 2.

[2] Dkt. No. 9.

[3] Dkt. No. 12.

[4] Dkt. No. 13.

Summary Judgment.[5]

B.  The Pleadings

   1. Claimant's Motion for Judgment on the Pleadings & Memorandum in Support

   2. Commissioner's Motion for Summary Judgment & Memorandum in Support

C.  Recommendation

   I recommend that:

   1. Claimant's Motion for Judgment on the Pleadings be **DENIED** because the ALJ properly determined Claimant's impairments are not severe; properly considered Claimant's combination of impairments; properly considered the treating rheumatologist's opinion; properly developed the record; properly evaluated Claimant's mental impairments, and properly made a credibility determination.

   2. Commissioner's Motion for Summary Judgment be **GRANTED** for the same reasons set forth above.

## II. Facts

A.  Procedural History

   Claimant filed an application for disability benefits on February 7, 2008 due to alopecia, psoriasis, psoratic arthritis, plantar fascitis, venous insufficiency, asthma, a sciatic nerve condition, hyperglycemia, endometriosis, and acid reflux. (Tr. 163, 198 ). The application was initially denied on April 9, 2008 and on reconsideration on October 10, 2008. (Tr. 19, 36). Claimant requested a hearing before an ALJ on December 9, 2008 and received a hearing on March 24, 2010 in Morgantown, West Virginia. (Tr. 19, 36).

---

[5]Dkt. No. 15.

On May 6, 2010, the ALJ issued a decision adverse to Claimant finding that she was not under a disability within the meaning the Social Security Act through June 30, 2007, the last date insured, although he found that Plaintiff had certain severe impairments including diabetes mellitus, asthma, psoriatic arthritis, and left leg discrepancy. (Tr. 21). The ALJ also found Claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) as standing/walking or sitting at least six hours in an eight-hour workday; can perform climbing of ladders, ropes or scaffolds occasionally; must avoid concentrated exposure to temperature extremes of hot and cold and respiratory irritants such as fumes, dusts, gases, odors, or other pollutants; and must avoid all exposure to workplace hazards such as dangerous moving machinery or unprotected heights. (Tr. 22). Claimant requested review by the Appeals Council but was denied. (Tr. 1-3). Claimant filed this action, which proceeded as set forth above, having exhausted her administrative remedies.

B.  Personal History

Claimant was born on June 25, 1973, and was thirty six years old on the date of the March 24, 2010 hearing before the ALJ. (Tr. 36, 44). Claimant completed school through the twelfth grade and also obtained her phlebotomy license after high school. Claimant has prior experience as a cashier, a house cleaner, janitor, homecare worker, as a certified nursing assistant, and as worker with a remodeling crew (Tr. 43, 46-56).

C.  Medical History

The following medical history is relevant to the issue of whether substantial evidence supports the ALJ's finding that the Claimant is not under a disability and can still perform work in the national economy:

Plaintiff was born with a leg length discrepancy and had to wear leg braces as a child. (Tr. 58-59). She also developed psoriasis in high school and the skin disease caused her to feel depressed. (Tr. 59, 92). In October 2005, Plaintiff began losing her hair. On May 19, 2006, she went to Garrett County Memorial Hospital with complaints of dizziness, blurred vision, weakness and headaches. (Tr. 297). On July 14, 2006, she saw Sean McCagh with complaints that her alopecia and psoriasis were becoming worse and she was put on Remicade. (Tr. 356). In September 2006, Claimant went to the emergency room for cervical spine strain and right knee contusion due to a driving accident. (Tr. 293-96). The subsequent October 10, 2006 MRI, however, revealed no fractures, no joint effusion and no meniscal or tendinous abnormalities. (Tr. 322, 333). Dr. Foy therefore prescribed conservative therapy including taking ibuprofen, doing motion exercises, and compression with an Ace bandage, and Claimant's knee began feeling better. (Tr. 321-23). On October 6, 2006, Dr. McCagh later reported that Claimant's psoriasis was well-controlled. (Tr. 355). On October 16, 2006, Claimant complained of sinus congestion and asthma. (322-21).

On February 12, 2007, Complaint experienced weakness and fatigue with tunnel vision (Tr. 319). On March 7, 2007, Claimant saw Dr. Foy with complaints of tightness in her chest due to anxiety, and back pain, multiple joint pain, stomach pain, and stiffness of the neck due to depression. (Tr. 318). Dr. Foy diagnosed Plaintiff with depression/anxiety and prescribed her Effexor. (Tr. 318). He also stated that she may need counseling although he did not refer her to a counselor. (Tr. 318). When she returned to see Dr. Foy three weeks later, she stated the Effexor took the edge off her depression but she was switched to Bupropion Extended Release (Tr. 317).

In May 2007, Claimant reported to Dr. McCagh that she had a 95% improvement in her

psoriasis. (Tr. 354). She also reported that she was not depressed or anxious. (Tr. 354). On June 6, 2007, Claimant saw Dr. Foy with complaints of lower extremity edema. He prescribed T.E.D. hose for her to help the swelling. (Tr. 316). On September 21, 2007, Claimant returned to Garrett County Memorial Hospital with complaints of a foot injury. X-rays also showed there was a possible narrowing of the tibiotalar joint space with no displaced bony fractures. (Tr. 292). On December 3, 2007, Claimant returned to see Dr. Foy, this time complaining that she could bear no weight on her left foot, however she had no edema, crepitus or other abnormalities and she had full range of motion. (Tr. 314, 387). On December 14, 2007, Claimant experienced psoriasis flare-ups even though she was being treated for it with Remicade. (Tr. 352).

On January 20, 2008, Claimant went to see Dr. Foy with complaints of left knee pain. She also reported losing almost twenty pounds with the help of Adipex to assist her weight loss plan. (Tr. 313). On April 4, 2008, Dr. Fulvio Franyutti with the State Agency concluded that Claimant's psoriatic arthritis, arthralgias, and other impairments did not prevent her from performing medium level work. (Tr. 342-49). On May 5, 2008, Dr. Foy completed an RFC assessment and noted that Claimant can only occasionally lift ten pounds and can only walk less than two hours in an eight hour workday. (Tr. 365). He also thought that her headaches and the problems she experiences with her legs, hands and feet would be exacerbated by noise, humidity, and odors that would prevent her from working in certain environments. (Tr. 366). He stated that even at a sedentary job, she would need her feet elevated fifty percent of the time. (Tr. 374). He also opined that she would need to be absent from work more than four days per month. (Tr. 375). He also noted that she had major depression disorder and poor social/economic status. (Tr. 367, 372). On May 19, 2008, Dr. Foy wrote a letter expressing his opinion that Claimant's

chronic disease prevents her from engaging in meaningful employment and that this has created social and financial issues for her. (Tr. 364).

On May 30, 2008, Dr. Mary Haggerty, a rheumatologist, conducted an evaluation of Claimant at Dr. Foy's request for treatment of her psoriatic arthritis. (Tr. 434-35). She added Methetrexate and folic acid to Claimant's medications. (Tr. 435). In October 2008, Dr. Haggerty completed questionnaires indicating that had limitations impeding her ability to work. (Tr. 449-51, 454-56, 459-61). In October 2008, Dr. Lauderman with the State Agency concluded that Claimant's psoriatic arthritis, asthma and other impairments did not prevent her from performing medium level work. (Tr. 440-47).

On February 3, 3009, Claimant was diagnosed with right ankle/foot pain, acute arthritis, gait abnormality, limb-length discrepancy, apropulsive gait, bunion deformity, pes planus, obesity, auto immune disease/possible psoriatic arthritis, and lupus. (Tr. 568).On February 10, 2009, Mark Gorman, DPO, recommended that she get orthotics. (Tr. 498). On March 18, 2009, Claimant was sent referred to physical therapy for her complaints of right plantar fascitis and was discharged on April 13, 2009. (Tr. 758, 559). On June 23, 2009, Dr. Houston evaluated Claimant and found that she had inflammatory arthritis but that she did not have active synovitis. (Tr. 597-98). On September 3, 2009, Dr. Houston noted that Remicade had completely resolved Claimant's psoriasis and that she though she had SLE rather than seronegative rheumatoid arthritis. (Tr. 604-07). In November 2009, Dr. Houston noted that Claimant's SLE was fairly quiescent and that her eyes had been examined but were doing fine. (Tr. 773). On December 29, 2009, Dr. Roy Carls suggested cortisone injections to help Claimant's midfoot forsal pain, and Claimant received the injections on January 7, 2010. (Tr. 779, 780). On March 15, 2010, Dr. Foy

6

wrote a letter describing Claimant's condition and how it prevents her from standing, walking, bending, or doing most physical activity without pain or discomfort, and noted that she is unable to maintain employment. (Tr. 782).

D.  Testimonial Evidence

Claimant testified that she was born with a problem that caused one leg to be shorter than the other and that she was diagnosed as a child with mild cerebral palsy. (Tr. 59). She testified that she always had to wear braces on her legs and that this issue caused her pain while she was growing up. (Tr. 58).

She testified that in high school she developed psoriasis and that she was using ointments to try to help the condition. (Tr. 59). She also had an episode of hair loss in high school, and was given topical creams and shots in the back of her head to stop the hair loss. (Tr. 59). However, she lost all her hair due to alopecia in 2004, and her psoriasis was still a problem. (Tr. 59). She also testified that she has joint pain and a venous stasis problem with her leg that causes her not to be able to stand on her feet for very long. (Tr. 60).

She testified that in January 2008, she began having problems with joint stiffness. (Tr. 60). Now she sees a rheumatologist and it is suspected she has lupus. (Tr. 61). She also testified that she often feels pain. Her arms and hands are constantly numb and have an achy feeling. (Tr. 62). She has lower back pain that is on and off. (Tr. 62). She says the lower back pain radiates down into her hip, into her legs, and into her feet. (Tr. 62). She also testified that her feet constantly burn. (Tr. 62). She estimates that on a scale from one to ten, her pain level stays at a seven or eight. (Tr. 63). She takes Remicade to help the joint pain and psoriasis but it also suppresses her immune system and makes her sick. (Tr. 63). She takes the Remicade every six

7

weeks and has been doing so since 2005. (Tr. 77).

Claimant also testified to the problems she has with her feet. She said that she had surgery on her foot because the bones were breaking down in that foot since that foot usually supports most of her weight. (Tr. 64). She has been prescribed rocker panel shoes for her feet and she also has custom orthotics to wear. (Tr. 64). She did not present to the hearing with a cane, wheelchair or crutches, but she testified that she uses a walker at home to support herself while getting in and out of the tub. (Tr. 65). She testified that because of her varicose veins and the venous stasis she can only stand for about ten to fifteen minutes. (Tr. 70). She also stated she has varicose vein nodules on her feet. (Tr. 70).

She also testified to her hair loss at the hearing. She stated that all her body hair is gone– she has no hair on her head, no eyebrows, and no hair on her arms and legs. (Tr. 68). The medicine she takes also makes her tired, and causes her to get headaches. (Tr. 69).

She testified that she cannot bend her knees and squat. (Tr. 71). She can close her hands to make a fist, but they are weak, stiff, and cold. (Tr. 71). She testified that she cannot lift more than five pounds. (Tr. 72). She also testified that she cannot sit very long because of her back and that if she does sit for too long, her feet and legs go numb because of the venous stasis. (Tr. 72).

She also testified to her breathing problems. She said that she takes Advair and Albuterol with a nebulizer when she has trouble breathing. (75).

She also struggles with depression and has been taking Effexor to regulate her mood. With the psoriasis, join pain, and alopecia, she says that sometimes she feels she has lost control of her life. (93). She testified that she does not have any memory problems and that it does not

seem like her comprehension has been affected. (Tr. 72).

E.  Lifestyle Evidence

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how the Claimant's alleged impairments affect her daily life.

Claimant is married and she lives together with her husband and her two sons, who were nine and eleven years old at the time of the hearing. (Tr. 44). Her children help her with chores around the house such as dusting and vacuuming, and they also help her at the grocery store.

She has a driver's license. (Tr. 44). She also watches television and uses the computer around once a week. (Tr. 72-73). She tries to go to church most Sunday mornings. (Tr. 85).

### III. The Motions for Summary Judgment

A.  Contentions of the Parties

Claimant's brief alleges six instances of error on the ALJ's part: 1) that the decision Claimant's mental impairments, obesity, and headaches were not severe was not based on substantial evidence, 2) that the ALJ did not evaluate the combination of Claimant's impairments, 3) that the ALJ failed to consider the opinion of Claimant's treating rheumatologist, 4) that the ALJ failed to adequately develop the record, 5) that the ALJ did not adequately apply 20 C.F.R. §404.1520A, and 6) that the ALJ did not adequately assess Claimant's credibility.

The Commissioner contends the ALJ's decision is supported by substantial evidence and should therefore be affirmed. Specifically, Commissioner responds that the ALJ's decision was

based on substantial evidence, that the ALJ did evaluate Claimant's impairments in combination, that the ALJ was under no duty to mention the rheumatologist's opinion, and that the ALJ did adequately develop the record, apply 20 C.F.R. §404.1520A, and assess Claimant's credibility.

B.   The Standards.

   1.   Summary Judgment. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

   2.   Judicial Review. Only a final determination of the Commissioner may receive judicial review. See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131, 133 (4th Cir. 1986).

C.   Discussion

1.   Whether the ALJ Erred in Determining Claimant's Mental Impairments, Headaches, and Obesity were Not Severe without Substantial Evidence

First, Claimant argues that the ALJ's determination that Claimant does not have severe mental impairments, headaches and obesity was in error because it was not based on substantial

evidence. At step two of the sequential evaluation process, the ALJ is required to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. § 404.1520c. A severe impairment is "one which impacts more than minimally on an individual's functional ability to perform basic work activities." Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984). An impairment or combination of impairments is not severe if it does not significantly limit a Claimant's physical or mental ability to do basic work activities. Claimants bear the burden of demonstrating they have a medically severe impairment. Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

As to her mental impairments, in order to properly evaluate the severity of mental impairments, the ALJ must consider the factors contained in section 12.00 of the Listing of Impairments in Appendix 1. The factors contained in section 12.00 are separated into four broad functional areas in which the Commissioner rates the degree of claimant's functional limitations, specifically, 1) activities of daily living; 2) social functioning; 3) concentration, persistence or pace; and 4) episodes of decompensation. 20 C.F.R. § 404.1520a.

In this case, the ALJ considered Claimant's depression according to 20 C.R.F. § 404.1520a but concluded that it was not severe because she had not experienced episodes of extended decompensation and because she only had mild restrictions to activities of daily living, mild restrictions in social functioning, and mild restrictions in concentration, persistence or pace. In coming to this conclusion, the ALJ noted that she had no longitudinal record of formal mental health treatment, and that the doctor had only treated her with medicine instead of referring her for a mental health evaluation, treatment, or counseling, although he did mention it. (Tr. 21, 24-26, 61, 74, 200, 243, 312-41, 364-76, 378-439, 494-97, 612, 747-54, 782). The ALJ also noted

11

the various activities she was able to complete, such as taking care of her children, cooking, chores, watching television, using the computer, shopping with her children, going to church and attending school functions. (Tr. 72-73, 82-85, 220-24). The ALJ also noted she did not have a problem being around other people and that she had no problem with her memory, indicating that she did not have a significant concentration problem. (Tr. 23, 72, 225, 287, 294). Accordingly, this Court finds that the ALJ's determination that Claimant does not suffer from a severe mental impairment is supported by substantial evidence.

As to her physical impairments, including obesity and headaches, the ALJ properly considered Claimant's subjective complaints of pain and other subjective symptoms, as is required. He considered Claimant's daily activities, the frequency, duration and intensity of her pain and other symptoms, her medication, and other side effects. For example, the ALJ noted that according to the medical records from the relevant period, Claimant did not make on-going complaints of headaches. (Tr. 293, 316-23, 354-56). With regard to her obesity, Claimant was not diagnosed with obesity until February 2009, well after her insured status expired. She also provided no evidence that her weight caused her any functional restrictions during the period at issue, such as restrictions to her ability to ambulate effectively. The medical evidence from Claimant's treating physicians and the State Agency physicians indicate that each failed to report her obesity caused functional limitations of disabling severity, singly or in combination with Claimant's other impairments. Accordingly, this Court finds the ALJ's opinion was based on substantial evidence.

2.  Whether the ALJ Erred by Failing to Properly Consider Claimant's Combination of Impairments

Next, Claimant asserts that the ALJ failed to properly evaluate her impairments in

combination. Claimant supports her argument with general references to the medical record and to the opinions of certain treating physicians. 20 C.F.R. § 404.1520 states that if a person has a severe impairment and is not engaging in substantial gainful activity, a disability claim will be granted if the Claimant has an impairment or combination of impairments that either meets or equals the criteria of an impairment listed in Appendix 1. The ALJ is required to compare the symptoms, signs and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. § 404.1526(a).

Here, the ALJ recognized that a combination of impairments can be considered severe enough to meet or medically equal the criteria of an impairment listed in Appendix 1. Tr. 20. Furthermore, the ALJ made a specific finding that Claimant's "*combination of impairments* causes significant limitations to the claimant's ability to perform basic work activities." Tr. 21. The ALJ then methodically went through the severe impairments to analyze whether any of them met a listed impairment. Tr. 22-26. However, after listing Claimant's severe impairments, the ALJ went on to make a finding that "the claimant did not have *an impairment or combination of impairments* that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." Tr. 22. Therefore, the Court finds the ALJ properly considered all of Claimant's impairments both individually and collectively and his finding that work exists in significant numbers in the national economy that Claimant could perform was supported by substantial evidence in the record.

3. <u>Whether the ALJ Failed to Properly Consider the Opinion of Treating Rheumatologist Dr. Haggerty</u>

Next, Claimant argues that the ALJ erred by not mentioning Dr. Haggerty's medical source statement or residual functional capacity questionnaires in his opinion. As a general rule,

13

"the ALJ need not evaluate in writing every piece of testimony and evidence submitted." Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993). See also Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995). All that is required is that required is that the ALJ sufficiently assess the evidence to "'assure us that the ALJ considered the important evidence...[and to enable] us to trace the path of the ALJ's reasoning.'" Carlson, 999 F.2d at 181 (quoting Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985). If the ALJ ignores an entire line of evidence, then the opinion would fall below the sufficient level, but that is not the case here. Carlson, 999 F.2d at 181. Here, Dr. Haggerty's assessment was essentially the same as Dr. Foy's assessment. In fact, the similarity between the two was even noted on the record at the hearing. When asked about Dr. Haggerty's assessment in comparison with Dr. Foy's, the VE responded that "[i]t says pretty much the same thing...pretty much the same but this, in addition, says in pushing and pulling, the individual would be– have reduced grip strength and indicates reaching and handling occasionally." Hr'g Tr. 102-03. Given this similarity, this is not a case where the ALJ has failed to consider key evidence. See Young v. Secretary of Health and Human Servs. 957 F.2d 386, 392 (7th Cir. 1992)(failure to discuss the claimant's testimony, affidavits, or three doctors' reports); Stein v. Sullivan, 892 F.2d 43, 47 (7th Cir. 1989)(failure to discuss any of the relevant medical evidence from the claimant's treating physician); Halvorsen v. Heckler, 743 F.2d 1221, 1226 (7th Cir. 1984)(failure to discuss the claimant's uncontradicted testimony). In addition, the ALJ went on to discuss his reasoning, in depth, for not assigning great weight to Dr. Foy's opinions. Accordingly, this Court finds the ALJ did not err in declining to discuss explicitly the medical records from Dr. Haggerty's office.

4. <u>Whether the ALJ Erred by Not Adequately Developing the Record</u>

In a fourth argument, Claimant contends that the ALJ failed in his duty to develop the record. More specifically, Claimant argues that the lack of a definite diagnosis on her mental status examination gave rise to a duty to obtain a consultative examination. "This circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ may order a consultative examination when the evidence is insufficient to support a decision on the claim, and a consultative examination must be ordered when additional evidence is necessary that is not contained in the medical records or when the evidence is conflicting or insufficient. 20 C.F.R. § 404.1519(a). In addition, "[t]he Claimant must also show he was prejudiced by the inadequate record and that, had the ALJ complied with the regulation, he 'could and would have adduced evidence that might have altered the result." Hyde v. Astrue, 2008 U.S. App. LEXIS 10228 (5th Cir. 2008) (citing Kane v. Heckler, 731 F.2d 1216, 1220 (5th Cir. 1984)). Remand is necessary where the ALJ fails to fulfill his duty to develop the medical record and the Claimant is prejudiced as a result. Walker, 642 F.2d at 714. Prejudice results where the Commissioner's decision "might reasonably have been different had the evidence been before [him] when the decision was rendered." King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979).

In this case, the record concerning claimant's alleged mental impairments was not incomplete or inadequate so as to require the ALJ to further develop the record by ordering a consultative examination. The record in this case was sufficient to support the ALJ's

15

determination because the medical record contained evidence that Claimant had no problem getting along with others, that her condition had not affected her memory, concentration, understanding, and ability to follow instructions. (Tr. 71, 225-26, 287, 294). The record in this case also indicated that she had no longitudinal record of formal mental health diagnosis or treatment. She only receives medication from her primary care physician who has not actually referred her for mental health treatment or evaluation. (Tr. 21). The ALJ is under no duty to order a consultative examination if the record contains sufficient evidence to make a fair assessment of Claimant's impairments, therefore the Court finds this claim is without merit.

5.  Whether the ALJ Adequately Applied 20 C.R.F. § 404.1520a

Next, Claimant argues that the ALJ did not properly apply 20 C.F.R. § 404.1520a. Specifically, Claimant argues that this section imposes a duty of explanation and that the ALJ did not follow this because he did explain his conclusions. To evaluate mental impairments, ALJs are required to employ a specific technique that considers four functional areas including: activities of daily living; ability to maintain social functioning; concentration, persistence, and pace in performing activities; and deterioration or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a. The ALJ's decision must show the significant medical history and medical findings he or she considered and must include a specific finding as to the degree of limitation in each of the four functional areas. 20 C.F.R. § 404.1520a. In this case, pursuant to the psychiatric review technique set forth the ALJ concluded Claimant's depression was not severe because she had not experienced episodes of extended decompensation and because she only had mild restrictions to activities of daily living, mild restrictions in social functioning, and mild restrictions in concentration, persistence or pace. In coming to this conclusion, the ALJ

16

noted that she had no longitudinal record of formal mental health treatment, and that the doctor had only treated her with medicine instead of referring her for a mental health evaluation, treatment, or counseling, although he did mention it. (Tr. 21, 24-26, 61, 74, 200, 243, 312-41, 364-76, 378-439, 494-97, 612, 747-54, 782). The ALJ also noted the various activities she was able to complete, such as taking care of her children, cooking, chores, watching television, using the computer, shopping with her children, going to church and attending school functions. (Tr. 72-73, 82-85, 220-24). The ALJ also noted she did not have a problem being around other people and that she had no problem with her memory, indicating that she did not have a significant concentration problem. (Tr. 23, 72, 225, 287, 294). Accordingly, this Court finds that the ALJ properly applied 20 C.F.R. § 404.1520a and Claimant's argument should be dismissed because it is without merit.

6. <u>Whether the ALJ Made an Improper Credibility Determination</u>

Finally, Claimant argues that the ALJ erred in making his credibility determination. The Fourth Circuit stated the standard for evaluating a claimant's subjective complaints of pain in <u>Craig v. Chater</u>, 76 F.3d 585 (4th Cir. 1996). Under <u>Craig</u>, when a claimant alleges disability from subjective symptoms, he must first show the existence of a medically determinable impairment that could cause the symptoms alleged. <u>Id.</u> at 594. The ALJ must next "expressly consider whether a claimant has such an impairment." <u>Id.</u> at 596. If the claimant makes this showing, the ALJ must consider all evidence, including the claimant's statements about his symptoms, in determining whether the claimant is disabled. <u>Craig</u>, 76 F.3d at 595. While the ALJ must consider the claimant's statements, he need not credit them to the extent they are inconsistent with the objective medical evidence or to the extent the underlying objective

17

medical impairment could not reasonably be expected to cause the symptoms alleged.  Id.

Additionally, the regulations set forth certain factors for the adjudicator to consider to determine the extent to which the symptoms limit the claimant's capacity to work:

> 1) The individual's daily activities; 2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) Factors that precipitate and aggravate the symptoms; 4) Type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and 7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. 404.1529(c) and 416.929(c) (2010).

SSR 96-7p sets forth other factors that the adjudicator must also consider in addition to the objective medical evidence when assessing the credibility of an individual's statements. These factors include medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided by medical sources; and statements and reports about claimant's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the claimant's symptoms and how the symptoms affect the individual's ability to work. Furthermore, "[b]ecause [the ALJ has] the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (7th Cir. 1984) (citing Tyler v. Weinberger, 409 F. Supp. 776 (E.D. Va. 1976)).  "Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference." See Nelson v. Apfel, 131 F.3d 1228, 1237 (7th Cir. 1997).  "We will reverse an ALJ's credibility determination only if the claimant

can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000) (citing Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990)).

Claimant's argument regarding the ALJ's credibility determination is without merit. Here, the ALJ considered her symptoms, limitations, daily activities, social activities, and side effects, but in the end concluded that her statements regarding the intensity, persistence, and limiting effects of her symptoms were "fair, at best" because they were inconsistent. (Tr. 24). The ALJ also found that Claimant's medical record showed that should could still perform a range of sedentary and light work even with her credible subjective complaints. (Tr. 24-25). Accordingly, the ALJ reasonably found Claimant's allegations of completely debilitating limitations not entirely credible. Therefore, this Court finds that the ALJ had more than a mere scintilla of evidence and appropriately discredited Claimant's subjective statements regarding her pain and symptoms.

For the above reasons, Claimant's assertions do not warrant relief.

### IV. Recommendation

For the foregoing reasons, I recommend that:

1.  Claimant's Motion for Judgment on the Pleadings be DENIED.

2.  Commissioner's Motion for Summary Judgment be GRANTED. The ALJ's findings were supported by substantial evidence; he properly considered Claimant's combination of impairments; he properly considered the treating rheumatologist's opinion; he properly developed the record; he properly evaluated Claimant's mental impairments, and he properly made a credibility determination.

Any party who appears *pro se* and any counsel of record, as applicable, may, on or before

19

**March 23, 2012**, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

<u>DATED</u>: March 9, 2012

/s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE